[No. 5560. Decided September 6, 1905.]

JOHN JOHNSON et al., Appellants, v. H. O. SHUEY, Respondent.[1]

FRAUD—FALSE REPRESENTATIONS OF PRIVATE BANKER TO SECURE CREDIT — LIABILITY TO DEPOSITORS — PLEADING — COMPLAINT — SUFFICIENCY OF ALLEGATIONS OF FRAUD. In an action to recover of a private banker the amount of deposits fraudulently secured by the defendant, the complaint states a good cause of action for fraud, where it is alleged that he opened the bank without capital, fraudulently misrepresenting the same, and falsely representing that the bank was incorporated, thereby securing the deposits, and made a pretended sale of the bank to an incompetent person whose mismanagement resulted in the loss of the deposits.

BANKS AND BANKING — LIABILITY OF PRIVATE BANKER TO DEPOSITORS—COMPLAINT—SUFFICIENCY—DEFENSES—TRANSFER OF INTEREST IN BANK. A private banker is personally liable to repay de-

[1]Reported in 82 Pac. 123.

positors, on demand, the amount of their deposits at the time of his transfer of the bank, or the amount they might thereafter deposit in ignorance of the transfer, if without negligence in failing to discover the transfer, and this right of action is assignable.

SAME—DEFENSES—PRESENTATION OF CLAIMS TO RECEIVER AND ACCEPTANCE OF DIVIDENDS—ORIGINAL DEBTOR NOT DISCHARGED BY UNSUCCESSFUL EFFORTS TO RECOVER. A depositor's right of action against a private banker is not discharged by the filing of a claim and acceptance of a dividend from a receiver of the banker's assignee to whom the bank had been sold, and who had agreed to repay the deposits; since the promise to pay the deposits may be sued on by the depositors in their own names, and merely makes the original debtor a surety, and both debtors may be pursued, severally or jointly.

ELECTION OF REMEDIES—JOINT DEBTORS. Where two are severally liable to pay the same debt, an attempt to collect from one is not such an election of remedies as to bar an action against the other upon failing to collect the whole debt in the first action.

RECEIVERS — JUDGMENT IN RECEIVERSHIP ACTION WHEN NOT RES JUDICATA AS TO SEVERAL LIABILITY OF ONE CREDITOR TO OTHER CREDITORS. An order for distribution in a receivership to the effect that the insolvent was indebted to a certain creditor, and fixing his *pro rata* share, is not *res judicata* of the several liability of such creditor to the other creditors, where he stood in the position of surety for the insolvent, when that issue was not raised in the pleadings or tried, and the other creditors did not seek to have his *pro rata* share paid over to them.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 14, 1905, in favor of the defendant, on motion for judgment on the pleadings, in an action founded on deceit.   Reversed.

*Walter S. Fulton,* for appellants.   There was no election of remedies.   7 Ency. Plead. & Prac., p. 363 and note; *Powers v. Benedict,* 88 N. Y. 605; *Singer v. Schilling,* 74 Wis. 369, 43 N. W. 101; *Lee v. Burnham,* 82 Wis. 209, 52 N. W. 255; *Walden Nat. Bank. v. Birch,* 130 N. Y. 221, 29 N. E. 127, 14 L. R. A. 211; *Union Cent. Life Ins. Co. v. Schidler,* 130 Ind. 214, 29 N. E. 1071, 15 L. R. A. 89; *Lawrence v. Security Co.,* 56 Conn. 423, 15 Atl. 406, 1 L. R. A. 342.

*H. R. Clise* and *John B. Hart,* for respondent, contended, among other things, that the presentation of claims in the receivership and acceptance of the dividends constituted an election of remedies. 7 Ency. Plead. & Prac., 361; *Moller v. Tuska,* 87 N. Y. 166; *Nanson v. Jacob,* 93 Mo. 331, 6 S. W. 246, 3 Am. St. 531; *Gaffney v. Megrath,* 23 Wash. 476, 63 Pac. 520; *McWilliams v. Thomas* (Tex.), 74 S. W. 596; *Robb v. Voss,* 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52; *Fowler v. Bowery Sav. Bank,* 113 N. Y. 450, 21 N. E. 172, 10 Am. St. 479, 4 L. R. A. 145; *Hansen's Empire Fur Factory v. Teabout,* 104 Iowa 360, 73 N. W. 875; *Terry v. Munger,* 121 N. Y. 161, 24 N. E. 272, 18 Am. St. 803, 8 L. R. A. 216; *Standard Oil Co. v. Hawkins,* 74 Fed. 395, 33 L. R. A. 739; *Moline Plow Co. v. Rodgers,* 53 Kan. 743, 37 Pac. 111, 42 Am. St. 317; *National Bank v. First Nat. Bank,* 57 Kan. 115, 45 Pac. 79; *McLean v. Ficke,* 94 Iowa 283, 62 N. W. 753; *Mercantile Realty Co. v. Stetson,* 120 Iowa 324, 94 N. W. 859; *Bauman v. Jaffray,* 86 Tex. 617, 26 S. W. 394; *Clealand v. Walker,* 11 Ala. 1058, 46 Am. Dec. 238.

FULLERTON, J.—This is an appeal from a judgment rendered on the pleadings. The appellants, as assignees of the depositors of the Bank of Ballard, commenced this action to recover from the respondent the difference between the amounts the depositors had to their credit at the time of the failure of the bank, and the amounts thereafter paid them by the receiver of the bank's assets. The appellants are the holders of some one hundrd and sixty-five different claims, and their complaint contains that number of separate causes of action.

The substance of each cause of action is that, at the time the depositors who assigned their claims to the appellants opened accounts with the Bank of Ballard, the bank was owned and conducted by the respondent, H. O. Shuey, individually, and that he fraudulently, and for the

purpose of inducing the assignors of the appellants to open accounts with him, represented to them, and the public generally, that the bank was incorporated, and that the amount invested in it as capital thereof was $25,000; whereas, in truth and in fact, the bank was not incorporated, and no sum in excess of $3,500 was invested in the business thereof. It is further alleged that the respondent, after receiving sums of money from the several assignors of appellants, afterwards, and without notice to such depositors, attempted to sell all his interests in the bank and its business to one W. W. DeLong, for the sum of $12,000; that the said DeLong was inexperienced in the banking business; that he had no means with which to purchase the bank, and was financially irresponsible and without money or means with which to carry on such banking business; all of which was well known to the respondent, who, notwithstanding his knowledge, fraudulently, secretly, and for the purpose of escaping liability to said depositors, attempted to constitute DeLong the owner and operator of said banking business, and allowed DeLong to handle the funds of the bank as he saw fit; that, in part payment of the purchase price agreed upon at such pretended sale, the respondent directed and caused DeLong to take out of the funds belonging to the depositors, and pay him, $7,500, which money he received on account of the purchase price at the pretended sale; and that the respondent thereupon, without the knowledge or consent of the depositors, withdrew from the bank his credit, personal attention, and control, and thereafter refused it financial aid, credit, or assistance; that, as a result of those acts, the bank became insolvent, and on the 30th of January, 1905, closed its doors and suspended payments; that thereafter a receiver was appointed for it, its affairs wound up, and a certain per cent only of the amount the several depositors had on deposit at that time were repaid them; and judgment against respondent is demanded for the amount remaining unpaid.

The respondent interposed a demurrer to the complaint, which the trial court overruled, whereupon he answered, admitting that he owned the bank previous to the 12th day of March, 1902, and averring that on that day he sold the same, together with the good will of the business, certain real estate, and fixtures, to W. W. DeLong, for $12,000, and that DeLong went into possession of the property, and from thereafter had sole charge of it.  He also admitted that the bank became insolvent and closed its doors on January 30, 1903; that a receiver was appointed to wind up its affairs, and did so wind them up, paying the several depositors the sums credited to the several causes of action set out in appellants' complaint.  All other allegations of the complaint were denied.

Two affirmative defenses were interposed.  In the first, it is alleged that the respondent sold the bank on the 12th day of March, 1902, to W. W. DeLong, giving him a deed of the real estate and a bill of sale of the personal property, which were at that time duly recorded in the auditor's office of the county of King, the county in which the bank was situated; that DeLong immediately entered into the possession of such property, and continued in such possession until January 31, 1903, when a receiver was appointed for the bank at the suit of a depositor; that thereafter the receiver gave notice to all persons having claims against W. W. DeLong and the Bank of Ballard to present them, duly verified; that all the persons named in the several causes of action set out in the appellants' complaint presented to the receiver their written claims for the amount which they had on deposit, which amounts included the sums sued for in this action, each claim being duly verified by its claimants, and collected all of the assets of the bank, and paid to each person named in the complaint his due proportionate part thereof.

The second affirmative defense, after repeating the matter contained in the first affirmative defense, alleged that the

respondent was a creditor of DeLong and the Bank of Ballard, and held as security certain property; that a question arose between the respondent and the receiver as to a settlement of these matters, whereupon the questions were submitted to the court, and the receiver was directed to pay the respondent $3,892.77, on condition that the respondent convey to him the property held as such security, and that, when this was done, "the same shall be a final and complete determination of all matters between said receiver and the said Shuey." This order, it is alleged, is a complete and final bar and adjudication of the right of the depositors to assert a liability against the respondent.

In reply, the appellants admitted that duly verified claims were presented to the receiver of the bank of Ballard, for the claims sued upon, and that the receivership case had been wound up and settled. They also admitted that the settlement between the receiver and the respondent took place as alleged, but denied the legal effect imputed to it, or that they, or any of their assignors, were parties thereto, or had knowledge thereof. The other allegations contained in the affirmative defenses were also denied.

On the filing of the reply, a motion for judgment on the pleadings was interposed by the respondent and sustained by the court, on the ground that the assignors of the appellants had, by presenting their claims to the receiver of the property of DeLong, and receiving dividends thereon from the receiver, elected to make DeLong their debtor for the amount of their deposits in the Bank of Ballard, and were now estopped from asserting an indebtedness against the respondent for any part of such deposits.

In this court, to sustain the judgment entered by the court below, the respondent makes three principal contentions: First, that the complaint does not state facts sufficient to constitute a cause of action; second, the contention upon which the trial court based its decision; third, that the rights of all the parties were adjudicated in the order of the court

confirming the settlement made between the respondent and the receiver; and as these contentions present all of the questions involved, we will consider them in their order.

That the complaint states a cause of action cannot be seriously questioned. Briefly restated, it is alleged in the complaint that the respondent opened the bank without capital, falsely and fraudulently pretending that it was incorporated with a capital stock of $25,000 for the purpose of inducing the assignors of the appellants to make deposits therein; that, by such means, he did induce them to make deposits therein, from time to time, under the belief that the bank was incorporated, and that the respondent was the owner and in charge of the same; that he made a pretended sale of the bank for the purpose of cheating and defrauding his depositors, put an incompetent person in charge of the same without notice to such depositors, who so mismanaged as to cause the loss of the greater part thereof, the amount being stated. Clearly, if the appellants can prove these allegations, they are entitled to recover.

But if we were to adopt the respondent's view and disregard the allegations of fraud, and assume that the several transactions were in fact what on their face they purported to be, the complaint would still state a cause of action. When the respondent opened the Bank of Ballard, as a private banker, and received deposits therein, he assumed a personal obligation to repay to each depositor, or to his order, on demand, the amount deposited by such depositor, either in one single amount, or in such fractional amounts as the depositor should direct. This personal obligation the respondent could not relieve himself of by merely transferring the bank and its deposits to a third person. So that, if it be true that the respondent did make a *bona fide* sale of the bank, and transfer it to DeLong, together with the deposits, he was still personally obligated to repay to each depositor the amount such depositor had therein at the time of the transfer, or might thereafter deposit in igno-

rance of such transfer and under the belief that the bank was still owned and operated by the respondent; unless, of course, the failure to discover the transfer was the negligence of the depositor. This personal obligation gave each depositor a right of action against the respondent, when demand for the amount deposited was made and payment thereof refused, and this right of action the depositors could assign to the appellants. Unless, therefore, some other element, shown on the face of the complaint, has intervened which cut off this right of action, the complaint states a cause of action, even if we disregard the allegations of fraud.

It is said that this right is cut off by the fact, shown on the face of the complaint, that the appellants' assignors presented the claims sued upon in this action to the receiver appointed over the property of the respondent's assignee, as creditors of such assignee, and received a *pro rata* share of such property as dividends, upon the winding up of the receivership. But clearly this fact alone does not bar the right to recover the balance from the respondent, if he is otherwise obligated to pay it. Two or more persons may be obligated to pay the same debt, and, where such is the case, the pursuit of one debtor does not relieve the others; unless, of course, the debt is collected from the debtor pursued, which the complaint makes clear is not the fact in the case before us. The same result follows if we assume that DeLong, at the time he purchased the bank's property and took over to himself the deposits, promised and agreed to pay, as a consideration for such transfer, the debts due the depositors, and assume, further, that the presentation of these claims to the receiver for payment was in effect a suit by the depositors against the assignee for the amount of such deposits. This court has held that where one person, for a valuable consideration, makes a promise to another to pay the debt of that other to a third person, such third person can maintain an action

in his own name upon the promise. *Norby v. Winsor,* 24 Wash. 535, 64 Pac. 726; *Dimmick v. Collins,* 24 Wash. 78, 63 Pac. 1101; *Gilmore v. Skookum Box Factory,* 20 Wash. 703, 56 Pac. 934; *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892; *Don Yook v. Washington Mill Co.,* 16 Wash. 459, 47 Pac. 964; *Solicitors' Loan & Trust Co. v. Robins,* 14 Wash. 507, 45 Pac. 39; *Silsby v. Frost,* 3 Wash. Ter. 388, 17 Pac. 887. And such, also, is the general rule. 9 Cyc. 378, note 7.

Such a promise does not, of itself, discharge the original debtor, nor does it have that effect when the creditor seeks to collect his debt from the new promisor. The effect of such a promise is, as between the original debtor and his assignee, to make the assignee the principal debtor and the original debtor a surety, but it gives the creditor a right of action against both of them, which he may pursue jointly or severally, as suits his convenience. Cases, *supra.* And this being so, the fact that he may have presented his claim to the receiver of the property of one of them, and received a part of his claim, does not bar his right to proceed against the other for the uncollected balance. Whatever view we take, therefore, of the effect of the allegations of fraud, the complaint states a cause of action.

What we have said in answer to the first contention in part answers the second. The trial court seemed to think that the depositors had a remedy against either the respondent or his assignee, for the recovery of their deposits, but not a remedy against both of them, and that the pursuit of one remedy was a bar to the after exercise of the other. It is undoubtedly true that, where a person has a choice of two or more remedies for the redress of one wrong, the selection of one is a bar to the subsequent exercise of any of the others, but it is at once obvious that the facts before us do not present that kind of a case. The appellants have never prosecuted this claim against the respondent in any other form of action; nor have their

assignors so prosecuted it. All that the respondent shows is that the appellants' assignors prosecuted the same action against another person, claiming that such other person was legally liable for the debt. But this could not relieve the respondent from his several legal liability for the debt, unless it is to be held that two persons, severally liable for one debt, cannot be pursued severally for the collection of that debt, a proposition it needs no argument to refute. The appellants and their assignors, therefore, by first pursuing the assignee of the respondent for the debt of the respondent, did not elect to make such assignee their sole debtor, and this being true, there was no such election of remedies by them as will bar the present action.

Nor is there anything in the case of *Gaffney v. Megrath,* 23 Wash. 456, 39 Pac. 973, that is opposed to this conclusion. In that case it appeared that Gaffney held a judgment against Megrath, which she placed in the hands of her attorney for collection. In payment of the judgment, the attorney took certain personal property of the judgment debtor, which he afterwards converted to his own use and refused to account therefor. Gaffney thereupon brought an action against the attorney for the value of the property so taken. She recovered a judgment against him, but failed on execution, whereupon she sought to enforce her original judgment against Megrath. It was held that, while the act of the attorney in taking property for the debt was unauthorized, and could have been repudiated by the judgment creditor when brought to her attention, yet she affirmed the act by proceeding against her attorney for the property, and could not afterwards repudiate it.

The difference between that case and this one is that there the debtor paid the debt to the creditor's agent, but not in the kind of property the creditor was obligated to accept. The creditor, therefore, had an option, when the property was presented to her, either to take it or refuse it, and having chosen to take it, she could not after-

wards repudiate her choice. But in the case before us, the respondent has not paid the debt to either the appellants, their assignors, or their agents, in any kind of property. It may be inferred that he turned property over to a third person who in consideration of its receipt promised to pay the debts due them. This, however, as we have shown, but gave the creditors further security for their debt—it did not relieve the respondent of his obligation.

The third contention is also without merit. A judgment to the effect that the receiver's insolvent owed the respondent, and that the respondent was entitled to a proportionate share of the insolvent's property, is not an adjudication that the respondent is not indebted to other creditors of the same insolvent. Had the other creditors joined issue on the respondent's claim, and sought to have his *pro rata* share paid over to them on their indebtedness, the order of the court granting or refusing that demand might have been a final determination of the question whether or not the respondent was obligated on the demands the creditors were seeking to enforce against the property in the receiver's hands; but no such issue was presented or tried, so far as the pleadings show, and hence the order cannot be *res judicata* of that question.

The judgment is reversed, and the cause remanded for trial.

MOUNT, C. J., RUDKIN, CROW, HADLEY, and DUNBAR, JJ., concur.

ROOT, J., having been of counsel for interested parties, took no part.